IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| STEVEN CHARLES MILLER, | ) | Case No. 08-41146 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| TUESDAY PETRO, | ) | Adversary No. 08-4144 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEVEN CHARLES MILLER, | ) | |
| | ) | |
| Defendant. | ) | |

<u>ORDER DIRECTING JUDGMENT IN FAVOR OF DEFENDANT ON § 727
CLAIM AND IN FAVOR OF PLAINTIFF UNDER § 523(a)(6)</u>

Tuesday Petro, as assignee of a Judgment in favor of Ronald McCullough based

on racial discrimination, seeks a determination that Debtor Steven Charles Miller's

discharge be denied pursuant to 11 U.S.C. § 727(a)(4) for failing to disclose assets on

his bankruptcy schedules or that McCullough's Judgment debt be declared

nondischargeable under 11 U.S.C. § 523(a)(6) for willful and malicious injury.  This

is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J) over which the Court has

jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1).  The following

constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52

of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule

7052 of the Federal Rules of Bankruptcy Procedure.  For the reasons that follow, the

Court finds in favor of the Debtor on Petro's claim for denial of discharge under

§727(a)(4), and in favor of Petro on her claim for nondischargeability under

§523(a)(6).

## Factual Background

For some time prior to 2000, the Debtor and his now-wife, Donalda Rose a/k/a

Donna Miller ("Rose"), operated a private security firm in Oregon known as M&R

Security Investigations, Inc.  Ronald McCullough was an employee of M&R Security

for about two years.  On August 5, 1998, McCullough filed a Complaint in the United

States District Court for the District of Oregon against M&R Security, Rose, the

Debtor, and Laura Nicoson d/b/a Loss Prevention Security Specialists.[1]    The

Complaint alleged that the defendants in that action discriminated against McCullough

and created a hostile work environment based on his race and that they retaliated

against him for reporting it.  He alleged violations of 42 U.S.C. §§ 2000e *et seq.* and

1981, violations of Oregon statutory law, and asserted a claim for intentional infliction

of emotional distress.  Each of the defendants filed an Answer in that case.  In October

1999, counsel for the M&R Security, Rose, and the Debtor withdrew from the case.

---

[1] Laura Nicoson d/b/a Loss Prevention Security Specialists apparently bought M&R
Security from Rose and the Debtor after the events alleged in the Complaint occurred and was
named in the lawsuit as a successor to the company.

2

The District Court scheduled a jury trial for April 3, 2000.  Meanwhile, McCullough settled with Nicoson.  At the scheduled trial date, McCullough appeared, but none of the remaining defendants appeared.  The District Court, without a jury, heard testimony from McCullough and his other witnesses as to the *prima facie* elements of the causes of action and damages and, at the conclusion of the trial, the trial judge orally announced a ruling in favor of McCullough.  On April 5, 2005, the District Court entered a default Judgment in McCullough's favor, and against M&R Security, Rose, and the Debtor, in the amount of $159,000 in general damages, and $100,000 in punitive damages.  McCullough later assigned the Judgment to Kimberley C. Bartley and Tuesday Petro d/b/a Judgment Stalkers (hereafter, collectively referred to as "Petro").

Meanwhile, at some point while the District Court case was pending or shortly thereafter, the Debtor and Rose moved to Missouri.  Petro registered the Oregon Judgment in Missouri on April 27, 2007.

On December 12, 2007, the Debtor filed a Chapter 13 bankruptcy case, but that case was dismissed pursuant to § 109(e) because his unsecured debts exceeded $336,900.

On March 28, 2008, the Debtor filed this Chapter 7 bankruptcy case.  Petro filed this adversary action seeking to have the Debtor's discharge denied under §

727(a)(4) for failing to disclose various items on his schedules and seeking to have the

District Court Judgment declared nondischargeable under § 523(a)(6) as a debt

resulting from a willful and malicious injury.

## Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(4)

Section 727(a)(4) provides that the court shall grant the debtor a discharge

unless "the debtor knowingly and fraudulently, in or in connection with the case . . .

made a false oath or account."[2]  "A trustee or creditor requesting that the court deny

a debtor a discharge bears the burden of proving each of the elements of the applicable

claim by a preponderance of the evidence."[3]  To do so, the plaintiff must establish that

(1) debtor knowingly and fraudulently; (2) in or in connection with the case; (3) made

a false oath or account; (4) regarding a material matter. [4] Statements and

representations made by a debtor in his schedules have the force and effect of oaths

under § 727(a)(4).[5]

Petro initially asserted that the Debtor failed to list several assets, including an

---

[2]  11 U.S.C. § 727(a)(4).

[3] *Towle v. Hendrix (In re Hendrix)*, 352 B.R. 200, 205 (Bankr. W.D. Mo. 2006).

[4] *Dains v. Dains (In re Dains),* 384 B.R. 241, 252 (Bankr. W.D. Mo. 2008) (*citing Korte v. United States of America Internal Revenue Serv.(In re Korte),* 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001)).

[5] *Fokkena v. Peterson (In re Peterson)*, 356 B.R. 468, 476 (Bankr. N.D. Iowa 2006) (citing *In re Korte*, 262 B.R. at 474).

4

interest in a California corporation known as "No Record," a 2005 Trailer, and a 1976 Piper airplane, and a boat with a motor and boat trailer.  At the hearing, Petro's counsel announced that the only remaining issue was the boat, motor, and boat trailer, plus a purported debt owed to the Debtor's father which was not listed on the schedules but was discovered in connection with a Rule 2004 exam conducted shortly prior to the trial in this matter.

As to the debt to the Debtor's father, the Debtor listed on his schedules a 1997 Ford 150 pickup, valued at $1,000.  Apparently, the Missouri Department of Revenue shows that the Debtor's father, Charles E. Miller, Jr., has a lien on the truck or is a co-owner of the truck, although that distinction was not made clear at either the Rule 2004 exam or at trial.  In any event, Charles was not listed as a creditor in the schedules, nor did the schedules reveal any secured claim against the truck.  When asked about this at the Rule 2004 exam, the Debtor testified that his father had a lien, or was a co-owner of the truck, because the Debtor "owed him money," probably about $10,000, which the father loaned to the Debtor in 1997 to 2000.  At the trial, the Debtor testified that, although his name is on the truck, it is not his.  He also testified at trial that the $10,000 was not really a "loan," but was really an "investment" in M&R Security which was "wiped out" when Rose received a bankruptcy discharge. The Debtor testified that, although the money was not a gift from his father, the

Case 08-04144-abf    Doc 37    Filed 03/06/09    Entered 03/06/09 15:30:39    Desc Main
Document    Page 6 of 22

question of whether he still owes his father the money is a "personal issue" between his father and him.

The parties introduced no documentary evidence as to whether Charles has a lien on the truck or is a co-owner of it. Nevertheless, based on the testimony, it is evident that the nature of the truck's ownership and the debt to the father were not correctly disclosed on the schedules. However, the truck was listed as an asset in the schedules, and the Debtor credibly testified that he did not consider his father to be a creditor in the sense that he should be listed as one in his bankruptcy proceedings. Indeed, although this is a no-asset Chapter 7 case, there was no evidence that the father has ever asserted any sort of claim against the Debtor or that he intends to collect any alleged debt from him.

As to the boat, motor, and boat trailer, the Debtor stated that the boat was a homemade pontoon which was a "fixer upper" when he bought it in 2000 for $1,500. On December 3, 2007, which was three and a half months prior to filing his bankruptcy petition, he sold the pontoon, along with its motor and trailer, for fair value, which was $2,300. He then used $1,300 of those proceeds to pay his bankruptcy attorney.[6] He says he used the remainder for living expenses. He testified that he did not list the transfer on his bankruptcy schedules because he "did

_____

[6] $1,000 was for the attorney's fee, and, apparently, $299 was for the Chapter 7 filing fee.

not think about it."

"To merit denial of discharge, a debtor's misrepresentation or omission must be material."[7] "The threshold of materiality is fairly low:  The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property."[8]  The value of omitted assets is relevant to materiality, but materiality will not turn on value."[9] "An omission of a relatively modest asset will merit denial of discharge, if done with knowledge and fraudulent intent."[10]

The sale of the pontoon, motor, and trailer should have been disclosed on the schedules.  The father's interest in the truck should also have been disclosed.  Failing to do so were material omissions because they concern the Debtor's estate and the existence and disposition of the Debtor's property.  However, "[o]btaining a discharge is the key component of the 'fresh start' a bankruptcy proceeding is designed to give a debtor.  Accordingly, denying a discharge to a debtor is considered to be a 'harsh

---

[7] *In re Sears*, 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000).

[8] *Id.* (citation and internal quotation marks omitted).

[9] *Id.*

[10] *Id.*

7

and drastic penalty.'"[11] "For that reason, the grounds for denial of discharge listed in

§ 727 are strictly construed in favor of the debtor."[12]

Since an admission or other direct evidence of fraudulent intent is rarely

available, actual intent may be established by circumstantial evidence.[13] In evaluating

that evidence, "[c]ourts are often understanding of a single omission or error resulting

from an innocent mistake"[14] as opposed to a series or pattern of errors or omissions,[15]

when considering whether the omissions are sufficient to establish fraudulent intent.

Based on the evidence as a whole, I find that, while the Debtor's omissions may have

been material, they do not amount to the knowing and fraudulent making of a false

oath.[16] Therefore, Petro has failed to establish grounds sufficient to deny the Debtor's

---

[11] *Towle v. Hendrix (In re Hendrix)*, 352 B.R. 200, 205 (Bankr. W.D. Mo. 2006).

[12] *Id.*

[13] *In re Dains,* 384 B.R. at 252.

[14] *In re Peterson*, 356 B.R. at 478 ("Courts are often understanding of a single omission or error resulting from an innocent mistake . . . .") (*quoting In re Geller*, 314 B.R. 800, 807 (Bankr. D. N.D. 2004)).

[15] *Gray v. Gray (In re Gray),* 295 B.R. 338, 344 (Bankr. W.D. Mo. 2003) ("A series or pattern of errors or omissions may have a cumulative effect giving rise to an inference of an intent to deceive.") (*citing Beaubouef v. Beaubouef (In re Beaubouef),* 966 F.2d 174, 178 (5th Cir. 1992)).

[16] *Accord Fokkena v. Alber (In re Alber)*, 361 B.R. 499 (Bankr. N.D. Iowa 2007) (granting the debtor's discharge, despite his failure to list repossessed farm equipment and a $45,000 debt, which he did not list because he had a personal relationship with the banker and did not intend to discharge the debt; holding, in part, that there was no fraudulent intent because the only person harmed by not disclosing the debt was the debtor himself).

discharge under 727(a)(4).

## Nondischargeability of the Judgment Pursuant to 11 U.S.C. § 523(a)(6)

Alternatively, Petro asserts that McCullough's Judgment should be declared nondischargeable under § 523(a)(6). That section excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."[17] Wilful and malicious are two distinct requirements that Petro, as the party seeking to avoid the discharge of the debt, must prove by a preponderance of the evidence.[18] The Eighth Circuit has defined "willfulness" as "headstrong and knowing conduct" and "malicious" as "conduct targeted at the creditor . . . at least in the sense that the conduct is certain or almost certain to cause . . . harm."[19] Nondischargeability requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.[20]

The parties do not appear to dispute that the amount of the Judgment should be given collateral estoppel effect, such that the Plaintiff has a claim against the estate for that amount. Rather, the issue here is whether the issues of willful and malicious were previously decided by the Oregon District Court and, thus, whether collateral estoppel

---

[17] 11 U.S.C. § 523(a)(6).

[18] *In re Scarborough*, 171 F.3d 638, 641 (8th Cir. 1999).

[19] *Id.*

[20] *In re Porter*, 539 F.3d 889, 894 (8th Cir. 2008) (citations omitted).

9

should apply to render the Judgment nondischargeable under § 523(a)(6).

Collateral estoppel, also known as "issue preclusion," is a legal doctrine that bars relitigation of factual or legal issues that were determined in a prior court action,[21] and applies in nondischargeability actions under § 523(a)(6).[22] In this case, McCullough's Oregon lawsuit alleged damages for violations of 42 U.S.C. §§ 2000e and 1981, violations of Oregon statutory law, and asserted a claim for intentional infliction of emotional distress. The Judgment did not specify under which of those theories it was based, nor did it separate out specific amounts of the monetary judgment for each count. However, at the conclusion of the trial, McCullough's counsel had suggested an award of $50,000 for each of the three counts under 42 U.S.C. § 2000e, plus $9,000 in actual damages on the intentional infliction of emotional distress count, which would amount to $159,000, the amount of the Judgment for general damages. The trial judge's comments at the conclusion of the hearing also indicated that this might be the basis for the award. If this were the basis for the award, then it would not be necessary for me to discuss the claims based on 42 U.S.C. § 1981 and Oregon's civil rights statutes. Nevertheless, because the Judgment itself did not delineate the award out in that manner, I will address collateral estoppel as to each of the claims pled in

---

[21] *In re Scarborough*, 171 F.3d at 641 (citation omitted).

[22] *In re Porter*, 539 F.3d at 894.

10

the Complaint.

<u>*Collateral Estoppel Under Federal Law*</u>

As to the causes of action based on violations of federal law, in the Eighth

Circuit, the party asserting collateral estoppel must prove five elements: (1) the party

sought to be precluded in the second suit must have been a party, or in privity with a

party, to the original lawsuit; (2) the issue sought to be precluded must be the same

as the issue involved in the prior action; (3) the issue sought to be precluded must

have been actually litigated in the prior action; (4) the issue sought to be precluded

must have been determined by a valid and final judgment; and (5) the determination

in the prior action must have been essential to the prior judgment.[23]

As to the first element, McCullough was a party in the original (Oregon)

lawsuit, and the Debtor does not appear to dispute that Petro is in privity with him by

virtue of the assignment of the Judgment to her.  I find that she is, indeed, in privity

with McCullough.[24]  In addition, the Oregon Judgment was a valid and final judgment

which the Debtor did not appeal.  Thus, the critical questions here are whether the

---

[23] *In re Porter*, 539 F.3d at 894 (*quoting Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir. 2007)).

[24] "Privity" is defined as "[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter (such as a transaction, proceeding or piece of property); mutuality of interest." *Black's Law Dictionary* (8th ed. 2004).  By virtue of the assignment, Petro has a legally recognized interest in McCullough's Judgment and is, therefore, in privity.

11

issues sought to be precluded, namely, whether the Debtor's conduct was "willful and malicious" for purposes of § 523(a)(6), were the same as those issues involved in the Oregon litigation, whether determinations on those issues were essential to that Judgment, and whether those issues were "actually litigated" there.

On the retaliation count, the first and second of these questions were essentially answered by the Eighth Circuit in *In re Porter*. That case involved a claim for retaliation under 42 U.S.C. § 2000e-3(a), which prohibits employers from discriminating against an employee because the employee has opposed any practice that is unlawful under that subchapter, which includes both sexual harassment (as in *Porter*) and racial discrimination (as here), or because the employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.[25] One of McCullough's claims against the Debtor was based on the Debtor's knowing and intentional unlawful retaliation based on 42 U.S.C. § 2000e-3(a) because the Debtor fired him after he opposed the prohibited practices and complained about the racial discrimination and harassment on the job. I see no difference in retaliation based on sexual harassment or racial discrimination for these purposes. Consequently, based on *Porter*, "willful and malicious" are the same as the issues decided under the unlawful retaliation count, and

---

[25] *Sells v. Porter (In re Porter)*, 375 B.R. 822, 827 (B.A.P. 8th Cir. 2007).

those issues were essential to the Oregon Judgment.

McCullough also alleged two counts for racial discrimination under 42 U.S.C. § 2000e.  In finding in favor of McCullough on those counts, the Oregon District Court necessarily found that (i) the Debtor knowingly and intentionally discriminated against McCullough in the terms, conditions and privileges of his employment by creating a hostile work environment by using and/or allowing the use of offensive racial epithets in the presence of and/or directed at McCullough, and (ii) that the Debtor knowingly and intentionally paid McCullough lower wages based on his race,[26] as he had alleged in his Complaint.[27]  Further, the testimony at the trial in Oregon supports the conclusion that the Debtor's conduct was willful and malicious. Specifically, McCullough testified that, among other things, the Debtor referred to him at work as "the big nigger" (as opposed to another employee, who the Debtor referred to as "the skinny nigger") and, when McCullough was talking with the Debtor about pay and a raise and McCullough's becoming a supervisor, the Debtor asked him whether he wanted to be "a smart black man or a dumb nigger."  McCullough also produced testimony and documentary evidence that he was paid less than other

---

[26] *See* 42 U.S.C. § 2000e-2(a)(1) (making it unlawful for an employer to, *inter alia*, discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race).

[27] "Knowingly and intentionally" were specific allegations as to each of these counts.

13

similarly or less-qualified employees, based on his race.

I recognize that recklessly and negligently inflicted injuries do not meet the requirements of nondischargeability under § 523(a)(6).  However, if the debtor knows that the consequences (the injury) are certain, or substantially certain, to result from his conduct, the debtor is treated as if he had, in fact, desired to produce those consequences.[28]  As in *Porter* with regard to the retaliation count, by finding in favor of McCullough on the racial discrimination counts described above, the Oregon District Court necessarily found that the Debtor's "knowing and intentional" creation of a hostile work environment and the pay disparity was conduct which was headstrong and knowing and was targeted at McCullough, at least in the sense that his conduct was certain or almost certain to cause McCullough harm.  As a result, I find that § 523(a)(6)'s "willful and malicious" elements are the same as the issues decided under the racial discrimination count and those issues were essential to the Oregon Judgment.

McCullough then alleged three causes of action under 42 U.S.C. § 1981 for racial discrimination. As stated above, it would appear from the discussion at the conclusion of the Oregon trial that none of the Judgment was based on § 1981.

---

[28] *See In re Patch*, 526 F.3d 1176, 1180 (8th Cir. 2008) (*citing Geiger v. Kawaauhau (In re Geiger)*, 113 F.3d 848, 852 (8th Cir. 1997) (en banc)).

14

However, because the Judgment itself was not clear as to the basis for the award, I address collateral estoppel as to this provision as well. That provision grants all persons within the jurisdiction of the United States, the same right to make and enforce contracts and to the full and equal benefit of all laws and proceedings for the security of persons and property, regardless of race.[29]  McCullough alleged that the Debtor violated that provision by discriminating against McCullough's ability to make and enforce contracts by (i) knowingly and intentionally creating a hostile work environment by using and allowing the use of offensive racial epithets in McCullough's presence; (ii) knowingly and intentionally paying him less wages because of his race, and (iii) knowingly and intentionally firing him when he complained about the racial discrimination and harassment on the job.  The elements under these causes of action are very similar to those under 42 U.S.C. § 2000e above, and for the same reasons discussed above, I find that, to the extent that the Oregon District Court's Judgment was based on these causes of action, such a judgment involves the same issues as § 523(a)(6)'s "willful and malicious" requirements, and that the findings on those issues were essential to the Oregon Judgment.

Finally, in order for collateral estoppel to prevent the relitigation of the

---

[29]  42 U.S.C. § 1981(a).  "Make and enforce contracts" is defined to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).

Judgment based on federal law, the issues must have been "actually adjudicated" in the preceding litigation. Even though the Judgment against the Debtor was a default judgment because he failed to appear at the trial, preclusive effect can be given to a default judgment when the party opposing preclusive effect actively participated in the litigation.[30] Here, the Debtor was represented by counsel in the Oregon litigation for over a year before his counsel withdrew, and he filed an answer and participated in the litigation until that point. As a result, I find that the issues for nondischargeability under § 523(a)(6) were actually litigated in the Oregon lawsuit.

### Collateral Estoppel Under Oregon Law

McCullough alleged four causes of action under state law in the Oregon District Court lawsuit – three based on violations of Oregon's civil rights statutes,[31] and one for intentional infliction of emotional distress. As to those causes of action, "we look to the substantive law of the forum state in applying the collateral estoppel doctrine,

---

[30] *See, e.g., Gardner v. Nicholson*, 181 Fed. Appx. 961, 964-65 (11th Cir. 2006) (applying *res judicata* effect to a default judgment entered in a class action suit for discrimination under Title VII, 42 U.S.C. § 2000e) (*citing In re Bush*, 62 F.3d 1319, 1324 (11th Cir. 1995) (giving preclusive effect to default judgment against bankruptcy debtor for fraud, where debtor actively participated in litigation, was counseled, but later engaged in obstructive conduct).

[31] Again, as with the claims based on § 1981, it would appear from the transcript from the Oregon trial that none of the award was based on Oregon's civil rights statutes. However, because the Judgment was not clear as to which of the causes of action formed the bases for the award, I discuss each of them here.

16

giving a state court judgment preclusive effect if a court in that state would do so."[32]

In Oregon, "[i]ssue preclusion prevents relitigation in a later proceeding of an issue

of ultimate fact that has been finally determined by a valid prior proceeding."[33]  It can

be based on constitutional principles, the common law, or statute.[34]  Oregon statute

provides that an Oregon court must give preclusive effect to a judgment rendered in

another court "in respect to the matter directly determined, conclusive between the

parties, their representatives and their successors in interest . . . litigating the same

thing, under the same title and same capacity."[35]  In addition, the Oregon Supreme

Court has described the common law doctrine of issue preclusion as follows:

> If one tribunal has decided an issue, the decision on that issue may
> preclude relitigation of the issue in another proceeding if five
> requirements are met:
>
> 1.  The issue in the two proceedings is identical.
>
> 2.  The issue was actually litigated and was essential to a final
> decision on the merits in the prior proceeding.
>
> 3.  The party sought to be precluded has had a full and fair

---

[32] *In re Scarborough*, 171 F.3d at 641.

[33] *State Farm Fire & Cas. Co. v. Sallak*, 914 P.2d 697, 699 (Or. App. 1996).  Note that the Oregon courts have "abandoned the use of the terms '*res judicata*' and 'collateral estoppel' in favor of, respectively, 'claim preclusion' and 'issue preclusion.'" *Nelson v. Emerald People's Utility District*, 862 P.2d 1293, 1296 (Or. 1994).

[34] *Id.*

[35] Or. Rev. Stat. § 43.130.

opportunity to be heard on that issue.

4.  The party sought to be precluded was a party or was in privity with a party to the prior proceeding.

5.  The prior proceeding was the type of proceeding to which this court will give preclusive effect.[36]

"A proceeding that concludes in a judicial judgment unquestionably satisfies the final requirement of issue preclusion."[37]   Because collateral estoppel rests upon the principle that an issue was actually decided and was necessary to the judgment in a prior action, the party asserting estoppel bears the responsibility of placing into evidence the prior judgment and sufficient portions of the record, including the pleadings, exhibits, and reporter's transcript of the testimony and proceedings, to enable the court to reach that conclusion with the requisite degree of certainty.[38]

Again, McCullough was a party to the prior proceeding, and Petro is in privity with him and, because the Oregon Judgment is a "judicial judgment," it is a type of proceeding to be given preclusive effect.  Moreover, "a default judgment in Oregon

---

[36]  *State Farm v. Sallak*, 914 P.2d at 699 (*quoting Nelson v. Emerald People's Utility Dist.*, 862 P.2d 1293, 1297-98 (Or. 1993)).  *See also See State Farm Fire & Cas. Co. v. Century Home Components, Inc.,* 550 P.2d 1185 (Or. 1976) (setting forth two essential conditions for the application of collateral estoppel by a non-party against one who was a party to a prior action: First, there must exist an identity of issue between the prior action and action in which estoppel is asserted; and second, the party against whom estoppel is sought must have had a full and fair opportunity to contest the issue decided adversely him).

[37]  *Id.* at 700.

[38]  *State Farm v. Century Home Components,* 550 P.2d at 1188.

has the same force and effect as a verdict," and courts have held that, if a party has the opportunity to be heard in a matter, but chooses not to appear, the "full and fair opportunity" and "actually litigated" requirements are met.[39]  Consequently, the critical issues are, again, whether the issues in the two proceedings were identical and whether they were essential to the final decision on the merits in the Oregon litigation.

McCullough asserted three causes of action under § 659A.030 of the Oregon Statutes.  Similar to 42 U.S.C. § 2000e, discussed above, that section provides that it is an unlawful employment practice "[f]or an employer, because of an individual's race . . . to discriminate against the individual in compensation or in terms, conditions or privileges of employment."[40]  In addition, it is unlawful employment practice "[f]or any person to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful practice, or because that other person has filed a complaint, testified or assisted in any proceeding under this chapter or has attempted to do so."[41]  Similar to the causes of action discussed above, McCullough alleged that the Debtor violated the Oregon statutes by discriminating

---

[39]  *See Gilbertson v. PEI/Genesis, Inc.*, 2007 WL 2710437 at *3 (Bankr. D. Or. Sept. 12, 2007) (not reported) (*citing Gwynn v. Wilhelm*, 226 Or. 606, 609 (1961) ("The doctrine of *res judicata*, including collateral estoppel, as to matters essential to the judgment, applies to judgments by default.").

[40]  Or. Rev. Stat. § 659A.030(b).

[41]  Or. Rev. Stat. § 659A.030(f).

19

against him in the terms, conditions, privileges, and compensation of his employment by (i) knowingly and intentionally creating a hostile work environment by using and/or allowing the use of offensive racial epithets in the presence of and/or directed at McCullough; (ii) knowingly and intentionally paying him less wages because of his race; and (iii) discharging him when he opposed the practices prohibited by the statute and complained about racial discrimination and harassment on the job. The Oregon courts have expressly recognized that § 659.030 was modeled after Title VII and utilize cases under Title VII to interpret that section. As a result, the analysis as to collateral estoppel is the same here as above and I find that to the extent that the Oregon Judgment was based on violations of these statutes, it forms the basis for collateral estoppel as to willful and malicious under § 523(a)(6).

Finally, McCullough asserted a cause of action for intentional infliction of emotional distress. As stated, counsel at trial in the District Court suggested an award of actual damages of $9,000 as to this count. To prove the elements of an IIED claim, the Plaintiff must prove (1) an intent by the Debtor to inflict severe emotional distress on McCullough; (2) that McCullough's acts caused McCullough severe emotional distress; and (3) that the Debtor's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.[42] Oregon courts have held that racial and

---

[42] *See Harris v. Pameco Corp.*, 12 P.3d 524, 529 (Or. App. 2000).

20

ethnic slurs can be socially intolerable and can meet the third element.[43]  In holding

that the Debtor intended to cause McCullough severe emotional distress, which would

certainly constitute an injury, the Oregon Court necessarily found that the Debtor's

conduct was headstrong and knowing and that it was certain or almost certain to cause

McCullough harm.   As a result, I find that the issues in the Oregon lawsuit as to the

intentional infliction of emotional distress were identical to the elements of §

523(a)(6) and that those issues were essential to the final decision on the merits in the

Oregon litigation.   Consequently, collateral estoppel applies to bar relitigation of that

issue as well.

## Punitive Damages

The Oregon District Court awarded McCullough punitive damages in the

amount of $100,000.  Again, it did not specify under which of McCullough's theories

for relief the punitive damages were awarded.   However, punitive damages are

nondischargeable under § 523(a)(6) when such damages are based on the same

conduct as the underlying nondischargeable judgment.[44]

## Conclusion

---

[43] *Id*. (*citing Lathrope-Olson v. Dept. of Transp.*, 876 P.2d 345 (Or. 1994)).

[44] *In re Scarborough*, 171 F.3d at 644 ("We hold that where the compensatory and
punitive damage awards are based on the same underlying conduct, and the judgment for
compensatory damages is nondischargeable because it is based on willful and malicious
injury to another, then the punitive damages award is likewise nondischargeagble.").

For the foregoing reasons, on Plaintiff Tuesday Petro's claim for nondischargeability of the debt to her, the Court finds that the debt to Plaintiff is nondischargeable pursuant to 11 U.S.C. § 523(a)(6). The Clerk of Court is ORDERED to enter judgment in favor of the Plaintiff, and against Debtor-Defendant Steven Charles Miller, in the amount of $259,000. The Clerk of the Court is further ORDERED to enter Judgment in favor of Debtor-Defendant Steven Charles Miller on the Plaintiff's action for denial of his discharge based on 11 U.S.C. § 727, and grant the Debtor his discharge in the case, except as to the above-described debt to the Plaintiff. Each party to bear its own costs. All other requests for relief are DENIED.

IT IS SO ORDERED.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: 3/6/2009